UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SADEISHA JOHNS,

    Defendant.
_____/

Case No. 16-20062
HON. DENISE PAGE HOOD

# ORDER DENYING DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE [ECF Nos. 720, 726]

## I. Introduction

On October 5, 2020, Defendant filed a *pro se* Emergency Motion to Modify Sentence [ECF No. 720] and a Motion for Appointment of Counsel. After the Court granted the Motion for Appointment of Counsel, Defendant's appointed counsel filed a Motion for Reduction in Sentence pursuant to §3582(c)(1)(A). [ECF No. 726] For purposes of this Order, the Emergency Motion to Modify Sentence and the Motion for Reduction in Sentence shall be treated as one motion (hereafter, the "Motion" or "Motion for Compassionate Release"). The Government filed a timely response, and Defendant's appointed counsel filed a timely reply. For the reasons set forth below, the Motion is denied.

## II. Background

Defendant pleaded guilty to one count of RICO conspiracy, in violation of 18 U.S.C. § 1962(d). She was sentenced on January 11, 2018 to serve a term of 60 months, and her current release date is scheduled for June 19, 2022. She is incarcerated in Hazelton Federal Correctional Institution in West Virginia ("Hazelton FCI"). Defendant is a 35-year-old African-American woman who claims to suffer from pre-diabetes, hypertension, morbid obesity, major depression, and post traumatic stress disorder. She contends that, with these comorbidities, the ongoing spread of COVID-19 is a potential death sentence for her. She reports that she has never been tested for COVID-19 at Hazelton. It is undisputed that Defendant has exhausted her administrative rights within the BOP.

## III. Analysis

A court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). A court also must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. Although this Court and many others previously believed that U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) constituted the "applicable policy statement[]" with which

courts must comply under 18 U.S.C. § 3582(c)(1)(A), the Sixth Circuit recently established that Section 1B1.13 is not applicable, nor is it to be considered by the Court, when determining whether there are extraordinary and compelling reasons warranting a reduction in sentence. *See, e.g., United States v. Hampton*, No. 20-3649 (6th Cir. Jan. 19, 2021); *see also United States v. Elias*, No. 20-3654 (6th Cir. Jan. 6, 2021); *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020).

"Extraordinary" is defined as "exceptional to a very marked extent." Webster's Third International Dictionary, Unabridged (2020). "Compelling" is defined as "tending to convince or convert by or as if by forcefulness of evidence." *Id.* A court in the Eastern District of Michigan has described the requirements of "'extraordinary' as beyond what is usual, customary, regular, or common," and "'compelling reason' as one so great that irreparable harm or injustice would result if the relief is not granted." *See United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020) (citations omitted).

The Motion is based on Defendant's medical condition(s). Defendant asserts that her health conditions, in this time of the COVID-19 pandemic (circumstances that did not exist when she was sentenced), constitute an extraordinary and compelling reason for reducing her sentence. Defendant primarily relies on the following health conditions: hypertension, morbid obesity, and pre-diabetes. As to her pre-diabetes

condition, she argues that the A1C test measures an individual's average blood sugar for the past two to three months, with diabetes diagnosed at an A1C greater than or equal to 6.5%. Defendant reports that her A1C testing has ranged as high as 6.4%, suggesting that she is at the precipice of a diagnosis of diabetes. She is prescribed one Metformin HCL 500 mg tablet each day for treatment of this condition.

Defendant argues that she has elevated blood pressure that constitutes hypertension. Although the normal blood pressure for a 35 year old female is 114.5/75.5, her pressure has measured in the elevated ranges, such as 131/89 and 130/88. She has been prescribed 1 mg of Prazosin (an alpha-blocker) each night. Defendant states that she is morbidly obese, a condition in which one's Body Mass Index ("BMI") is higher than 35.6; it is undisputed that Defendant's recent BMI was measured at 39.3. Defendant notes that she also suffers from major depression and post-traumatic stress disorder.

Defendant cites a number of cases to support her contention that her health conditions warrant a reduction in sentence based on compassionate release. *See United States v. Gross*, No. 15-CR-769 (AJN), 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020) (granting compassionate release to an incarcerated person who was "severely overweight and suffers from high blood pressure and sleep apnea," finding that "the combination of health conditions and his incarceration compounds the risk COVID-19

4

poses to him, placing him in particularly grave danger" (internal citation and quotation marks omitted)); *United States v. Dawson*, No. 18-40085-HLT, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (granting compassionate release to an incarcerated person based on his obesity alone: "He has a medical condition (obesity) that the CDC recognizes puts him at an increased risk of developing serious illness if he were to become infected with COVID-19."); *Samy v. United States*, No. 2:16-cr-20610-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020) (motion for compassionate release granted based on the defendant's heightened risk of becoming severely ill from COVID-19 in light of multiple underlying conditions, including type 2 diabetes.); *United States v. Wise*, 18-cr-00072 (D. Md. May 18, 2020) (ECF 185 at 1) (Amended Govt. Response noting that "the Department of Justice. . . has taken the position that inmates who suffer from a condition identified by the Center for Disease Control and Prevention ("CDC") as putting them at higher risk for severe illness from COVID19 and who are not expected to recover from that condition, present an 'extraordinary and compelling reason' to be considered for compassionate release—even if that condition in ordinary times would not meet the terms of the policy statement. See U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I)."); *United States v Wright*, 17-cr-00388 (D. Md. May 19, 2020 (ECF 50) (same).

It is undisputed that the Center for Disease Control ("CDC") has stated that

"obesity" increases the risk of serious illness with COVID-19, independent of age. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html and https://perma.cc/UJT9-JMHS. Defendant cites numerous studies that suggest that there is a correlation between COVID-19 and increased health risks for certain persons, including those suffering from pre-diabetes (diabetes), hypertension, and psychiatric conditions, as well as for African-Americans. *See* ECF No. 726, PageID.6867-71. The Government argues that, of the conditions claimed by Defendant, only one—obesity—potentially puts her at "increased risk." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (as updated on December 29, 2020).

Defendant also argues and documents that the prison population is contracting COVID-19 at a much higher rate than the general population (more than 4 times more likely to be infected). Defendant notes the recent trend of increasing transmission and contraction of COVID-19 cases, specifically at the Hazelton facility. As of January 13, 2021, Hazelton FCI reported 73 cases and 23 cases of Covid-19 infections among prisoners and staff, respectively. This represents an increase from 24 cases and 5 cases on December 18, 2020, and 31 cases and 8 cases on December 23, 2020 (according to Defendant's reply brief). For those reasons and the inability of Defendant to engage in the recommended social distancing in prison, the Court does

not find persuasive the Government's suggestion that Defendant would be as at much risk of contracting Covid-19 outside of prison (due to her demonstrated noncompliance with court orders, applicable laws, etc.) as she is while housed at Hazelton FCI.

For purposes of the Motion, and for the reasons stated above, the Court will assume, without deciding, that Defendant has established a compelling and extraordinary reason for reduction in sentence.

Even if Defendant is correct that her health conditions makes her "unusually susceptible to hospitalization and death from" Covid-19, however, the Court finds that her criminal record and history establish that she is a danger to the community and a risk of flight, such that she should not be released early from prison. As the Government argues, Defendant committed crimes on behalf of the Rollin 60s Crips for seven years. She was an important member of the Rollin 60s Crips, and she was the leader of its female members. She collected membership dues, instigated and encouraged gang violence over Facebook, orchestrated methods for distributing drugs for the gang, and oversaw the recruitment and initiation of female members. Her role was critical because female members of the Rollin 60s Crips committed crimes. Such criminal activity included concealing drugs and guns on their bodies and driving cars during criminal "missions," conduct that helped the Rollin 60s Crips evade police

officers and searches. Finally, Defendant personally sold marijuana and ecstasy, the proceeds of which she funneled back to the Rollin 60s Crips to fund more crimes (which include carjackings, robberies, and murders).

Defendant's membership in the Rollin 60s Crips represented an ongoing pattern of criminal conduct. Beginning in 2003, Defendant's criminal conduct has included theft, assault and drugs. ECF No. 733, Ex. 2 at ¶¶51-56 (Sealed). At the age of 18, she was selling alcohol to minors. *Id*. at ¶51 (Sealed). She later embezzled money from an employer, threatened to "blow [her mother's] head off" with a BB gun, sold drugs, stole merchandise, and forged checks. *Id*. at ¶¶ 51-56 (Sealed). After numerous convictions while a member of the Rollin 60s Crips, she was convicted of RICO conspiracy at the age of 30 (her seventh conviction). Defendant remained in the Rollin 60s Crips until the day a search warrant was executed at her house and she was arrested.

The Court finds that such conduct establishes Defendant is dangerous, which weighs in favor of continued detention. *Teague v. Lane*, 489 U.S. 288, 309 (1989). The Court is reminded that Defendant did not comply with the Court's pretrial orders in this case, even though she claimed to Pretrial Services that youthful indiscretion was the reason for her criminal and/or non-compliant history. That assertion was betrayed only three weeks after her pretrial interview when she tested positive for

marijuana. While on bond, Defendant continued to test positive for marijuana and consistently failed to report to Pretrial Services in the months that followed. She then lied to the Probation Department about her marijuana usage, as she claimed she had only smoked marijuana on ten occasions (between the ages of 24 and 25).

Defendant acknowledges that history, but she argues that none of it establishes that she poses a danger to the community. She asserts that, except for a misdemeanor domestic violence offense more than 12 years ago, she has no convictions for violence. She states that she has already served more than half of her sentence and has built a very sound institutional record. Finally, she claims that she has mental health issues and marijuana substance abuse issues for which ongoing counseling/treatment in the community would best benefit her and society.

Her history, however, suggests that if the Court were to release her from prison early, she is unlikely to abide by conditions imposed by this Court or the CDC's guidelines for reducing the contraction and spread of Covid-19. She has violated each of her five state probationary sentences multiple times, either by failing to appear for court, neglecting to pay restitution for her crimes, or abstaining from counseling and substance abuse treatment plans mandated by the courts. Defendant contends that she would participate in those plans now, but the record before the Court reflects that Defendant did not comply with the Court's pretrial orders in this case, which, unfortunately, does not portend compliance in the future.

For these reasons, the Court concludes that Defendant's conduct with respect

to the underlying offense and her criminal history make her a danger to the community. The Court's weighing of Defendant's history, characteristics and the other factors set forth in § 3553(a)—which the Court indisputably must also consider under § 3582(c)(1)(A)—does not support the release of Defendant.

Taking all of the foregoing into consideration, the Court finds that a reduction of Defendant's sentence under § 3582(c)(1)(A) is not warranted. As the Court cannot discount the risk of danger to the community posed by Defendant (or that Defendant will not appear for probation or court ordered appearances), it will not grant Defendant a compassionate release due to the COVID-19 pandemic. Defendant's Motion is denied.

## IV. Conclusion

Accordingly,

IT IS ORDERED that Defendant's Motion for Compassionate Release [ECF Nos. 720, 726] is DENIED.

IT IS ORDERED.

Dated: March 23, 2021

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE